**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                            :
AUTO-OWNERS INSURANCE COMPANY,          :          CIVIL ACTION
                                    Plaintiff,          :
                                                            :
            v.                                            :          No. 12-7228
                                                            :
STEVENS & RICCI, INC. and                       :
THE HYMED GROUP CORPORATION,           :
                                    Defendants.         :
_____:

Henry S. Perkin, M.J.                                                      March 31, 2015

**MEMORANDUM OPINION**

            Before the Court are the Motion for Summary Judgment (Dkt. No. 43) filed on

July 15, 2014 by Plaintiff, Auto-Owners Insurance Company ("Plaintiff" or "Auto-Owners")),

the Cross-Motion for Summary Judgment of Defendant, The Hymed Group Corporation

("Defendant" or "Hymed") (Dkt. No. 47) filed on September 30, 2014, Auto-Owners'

Memorandum of Law in Support of Opposition of the Motion for Summary Judgment (Dkt. No.

52) filed on October 30, 2014, and Hymed's Reply to the Response to the Cross-Motion for

Summary Judgment (Dkt. No. 53) filed on November 14, 2014.  Following oral argument on the

Cross-Motions for Summary Judgment held on December 4, 2014, and for the reasons set forth

in this Memorandum, we will grant Auto-Owners' Motion for Summary Judgment and deny

Hymed's Cross-Motion for Summary Judgment.

I.          **BACKGROUND.**

            In this insurance coverage dispute, Auto-Owners seeks a declaratory judgment

pursuant to 28 U.S.C. § 2201 (2006) that it has no obligation to defend or indemnify Stevens &

Ricci in connection with the underlying class action litigation.  Hymed has counter-claimed for a

declaratory judgment that Auto-Owners is so obligated.

      **A.**      **Stevens & Ricci's Fax Advertising Program.**

      Defendant Stevens & Ricci was solicited by a fax broadcaster which represented that its fax advertising program complied with the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Stevens & Ricci then caused 18,879 unsolicited advertisements to be faxed by the fax broadcaster on its behalf, to 9,728 fax machines, including Hymed's, on or about February 8, 2006, and February 27, 2006.  In doing so, Stevens & Ricci did not willfully or knowingly violate the TCPA.

      **B.**      **Underlying Litigation.**

      Hymed commenced litigation against Stevens & Ricci in this Court, Civil Action No. 12-CV-3093, entitled *Hymed Group Corporation, a Pennsylvania corporation, individually and as the representative of a class of similarly-situated persons, Plaintiff v. Stevens & Ricci, Inc., Defendant* (the "Underlying Litigation").  In the Underlying Litigation, Hymed alleges that, on or about February 8 and February 27, 2006, it received a fax advertisement from Stevens & Ricci.  Hymed alleges that the transmission of that fax violates 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA") which, according to its Complaint, prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine."  Hymed alleges that it did not invite or give permission to Stevens & Ricci to send the fax or faxes and that, upon information and belief, Stevens & Ricci faxed the same and/or similar advertisements to Hymed and "more than 39 other recipients."  Hymed further alleges that the so-called "'junk faxes" "interrupt the recipient's privacy"; that they cause the recipient to lose "the use of its fax machine, paper, and ink toner"; that they "waste[]" the

recipient's "valuable time that would have been spent on something else"; and that they prevent the recipient's fax machine "from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipient's fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message." Hymed further alleges that the "junk faxes" "unlawfully interrupted" its "privacy interests in being left alone." The Complaint in the Underlying Action further alleged that the TCPA is a strict liability statute, so that Stevens & Ricci would be liable even if its actions were only negligent.

Based upon these factual allegations, Hymed asked the Court to certify the matter as a class action, and the class was certified. Hymed also seeks actual or statutory damages, whichever is greater, an injunction against future violations costs, and "such further relief as the Court may deem just and proper."

### C.    The Auto-Owners Policy

Auto-Owners issued a "Businessowners Policy" to Stevens & Ricci that includes a "Businessowners Liability Coverage Form," policy number 44-838-627-00 (the "Auto-Owners Policy"). The Auto-Owners Policy was in force and effect from December 5, 2005 through December 5, 2006, at the time Stevens & Ricci allegedly sent unsolicited faxes to Hymed and the other class members. The Auto-Owners Policy obligates Auto-Owners to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies." For "bodily injury" or "property damage" coverage to apply under the Auto-Owners Policy, the "bodily injury" or "property damage" must be caused by an "occurrence" and must "occur during the policy period."

The Auto-Owners Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  The term "property damage" is defined in the Auto-Owners Policy to mean "physical injury to tangible property,  including all resulting loss of use of that property" together with the "loss of use of tangible property that is not physically injured."  The term "occurrence" is defined in the Auto-Owners Policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Policy does not define "accident."

The term "personal injury" is defined in the Auto-Owners Policy to mean injury "other than 'bodily injury'" arising out of one or more of the following offenses:

a.   False arrest, detention or imprisonment;
b.   Malicious prosecution;
c.   Wrongful  entry into, or eviction of a person from, a room, dwelling or premise that the person occupies;
d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e.   Oral or written publication  of material  that  violates  a person's  right  of privacy.

"Personal injury" is only covered under the Auto-Owners Policy if it arises "out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you."

The term "advertising injury" is defined in the Auto-Owners Policy to mean injury arising out of one or more of the following offenses:

a.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
b.   Oral or written publication of material that violates a person's right of privacy;
c.   Misappropriation of advertising ideas or style of doing business;
d.   Infringement of copyright, title or slogan.

4

To be covered under the Auto-Owners Policy, "advertising injury" must be committed in the "course of advertising your goods, products or services."

The Auto-Owners Policy contains an exclusion for "bodily injury" or "property damage" which is "expected or intended from the standpoint of the insured."

**D.    Underwriting and Issuance of the Policy.**

Stevens & Ricci is incorporated in Arizona and its principal place of business is located in Arizona. When an application for insurance is submitted by an agency to the Mesa, Arizona branch of Auto-Owners, the application will be reviewed by an underwriter to determine what types of insurance the applicant wants placed, the type of risk or risks involved and a review of any prior losses. The underwriter who receives the application at the Mesa, Arizona branch will determine if the application meets Auto-Owners' acceptability and eligibility guidelines.

The underwriting file for the Policy reflects that the Policy was quoted by the Drachman-Leed Insurance Agency in Tucson, Arizona. The underwriting file for the Policy also includes an Insurance Binder issued by the Drachman-Leed Insurance Agency in Tucson, Arizona. The Drachman-Leed Insurance Agency then submitted Stevens & Ricci's application for insurance to Auto-Owners' Mesa Arizona branch. The decision to insure Stevens & Ricci was made by Auto-Owners entirely within the Mesa, Arizona branch of Auto-Owners. Stevens & Ricci's application for insurance was reviewed by Ms. Angela Peters, who is an associate underwriter in the commercial lines department of the Mesa, Arizona branch of Auto-Owners. Ms. Peters reviewed the application and made the decision to write the Policy for Stevens & Ricci. A processor at the Mesa, Arizona branch of Auto-Owners entered the policy into

5

Auto-Owners' company-wide system.

The underwriting file for the Policy reflects that Stevens & Ricci made Policy premium payments from Arizona, using an account at a bank located in Arizona. The Policy reflects the address of the insured, Stevens & Ricci, Inc., at 7831 Wrightstown Rd., # 107, in Tucson, Arizona. The Policy as issued also reflects that the insured premises were located at 7831 Wrightstown Rd., # 107, in Tucson, Arizona. The Policy includes specific endorsements reflecting that Stevens & Ricci is an Arizona insured and the Policy is underwritten as subject to Arizona laws and regulations.

       **E.**    **Tender, Defense and Settlement of the Underlying Action.**

Stevens & Ricci tendered the Underlying Litigation to Auto-Owners for coverage, and Auto-Owners agreed to defend and has defended Stevens & Ricci in the Underlying Action subject to a reservation of rights. Hymed, Stevens & Ricci and Auto-Owners have reached an agreement to compromise and settle the Underlying Action (the "Settlement Agreement"). Among other things, pursuant to the Settlement Agreement, Hymed, Stevens & Ricci and Auto-Owners have agreed to the entry of judgment in favor of the Class, and against Stevens & Ricci, in the amount of $2,000,000.00 (the "Judgment"). In addition, Hymed and the Class agreed to seek recovery to satisfy the Judgment only from the Auto-Owners Policy.

On December 4, 2014, this Court in the Underlying Litigation entered an Order approving the Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Settlement Class in light of the factual, legal, practical, and procedural considerations raised by the case. This Court also found, among other things, that: Stevens & Ricci was solicited by a fax broadcaster which represented that its fax advertising program complied with the TCPA;

18,879 unsolicited advertisements were sent by fax to 9,728 persons in February 2006; and Stevens & Ricci did not willfully or knowingly violate the TCPA and therefore treble damages are inappropriate.

## II.    <u>STANDARD OF REVIEW.</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-252 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  <u>Id.</u> at 248.

To defeat summary judgment, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (citing <u>Celotex</u>, 477 U.S. at 325).  The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim.  <u>Celotex</u>, 477 U.S. at 322-323.  If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.  <u>Id.</u> at 322; <u>Wisniewski v.</u>

Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).  When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case."  Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

The summary judgment standard does not change when cross-motions for summary judgment are filed by the parties.  Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1997).  When addressing cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp.2d 612, 615 n.1 (E.D. Pa. 2003)(quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (1998)).

## III.   DISCUSSION.

### A.   Choice of Law.

The Policy at issue does not contain a choice of law provision.  As a preliminary matter, therefore, the Court must make the determination of what law should apply to this contract.  Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am., 693 F.3d 417, 432 (3d Cir. 2012).  In a diversity action such as this, the court applies the choice of law rules of the forum state, in this case, Pennsylvania.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Pennsylvania "applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the most interest in the problem."  Hammond v. U.S. Liability Ins. Co., No. 14-0847, 2015

WL 401503 (W.D. Pa. Jan. 28, 2015)(quoting Specialty Surfaces Intern., Inc. v. Continental Cas.

Co., 609 F.3d 223, 229 (3d Cir. 2010)(quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227

(3d Cir. 2007))).  The first part of the choice of law inquiry is determining if there is an actual or

real conflict between the potentially applicable laws.  Hammersmith, 480 F.3d at 230.  In this

case, the particular issue before the court involves the interpretation of clauses of the subject

insurance contract to ascertain whether Auto-Owners must defend and indemnify Hymed in the

underlying litigation.

        Auto-Owners maintains that Pennsylvania law should apply to this analysis and

Hymed contends that Arizona law is the applicable law regarding the issue of whether there is

coverage for the claims at issue, specifically if there is coverage for alleged violations of the

TCPA by Stevens & Ricci.  We must determine the substance of these states' laws, and look for

any actual, relevant differences between them.  Hammersmith, 480 F.3d at 230.  If the two

jurisdictions' laws are the same, there is no conflict and a choice of law analysis is unnecessary.

Id.  If there are actual, relevant differences between the laws, then we "examine the governmental

policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for'

situation." Id.  "A deeper choice of law analysis is necessary only if both jurisdictions' interests

would be impaired by the application of the others' laws (i.e., there is a true conflict)."  Id.  If a

true conflict exists, courts are required to perform a deeper analysis by weighing the "contacts

establishing significant relationships," as outlined in the Restatement (Second) of Conflict of

Laws (1971) against " the relevant States' policies with respect to the underlying controversy."

FLS Holdings, Inc. v. Liberty Mut. Fire Ins. Co., CIV.A. No. 13-2511, 2015 WL 263827, at *6

(E.D. Pa. Jan. 21, 2015)(quoting Hammersmith, 480 F.3d at 231.)  We must first determine

whether there is an actual conflict between Pennsylvania and Arizona law relevant to an insurer's duty to defend and duty to indemnify for alleged violations of the TCPA.

In Pennsylvania, "if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." FLS U.S. Holdings, Inc. 2015 WL 263827, at *5 (quoting Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999)(citing Erie Ins. Exch. v. Transamerica Ins, Co., 533 A.2d 1363 (1987))).  Similarly, under Arizona law, "if any claim alleged in the complaint is within the policy's coverage, the insurer has a duty to defend the entire suit, because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed." W. Cas. & Sur. Co. v. Int'l Spas of Arizona, Inc., 634 P.2d 3, 6 (Ariz. App. 1981); see also Scottsdale Ins. Co. v. Van Nguyen, 763 P.2d 540, 541-42 (Ariz. App. 1988)(an uncovered, concurrent cause of harm does not defeat coverage if there is a separate, covered cause of harm).  Hymed acknowledges in its Cross-Motion that "[i]n these regards, Arizona law may be consistent with Pennsylvania." Cross-Mot., p. 9.  It appears to this Court that the laws of Arizona and Pennsylvania are substantively identical regarding an insurer's duty to defend. A choice of law analysis is therefore unnecessary because there is no real conflict between Pennsylvania and Arizona law regarding an insurer's duty to defend.  See Hammersmith, 480 F.3d at 230 (stating "[w]e think it is incorrect to use the term 'false conflict' to describe the situation where the laws of two states do not differ.  If two jurisdictions' laws are the same, then there is no conflict at all and a choice of law analysis is unnecessary.")

Hymed nevertheless goes on to argue that an outcome determinative conflict of law exists between Arizona law and Pennsylvania law because Arizona law requires the court to

consider the "reasonable expectations of the insured" when determining questions of coverage. Hymed argues that Arizona law mandates that the court should ignore the plain, unambiguous language of an insurance contract in favor of the reasonable expectations of the insured.  Hymed cites Gordinier v. Aetna Cas. & Sur. Co., 742 P.2d 277, 283 (Ariz. 1987), where the court held that even though terms and phrases which are not ambiguous to the court "cannot be understood by the reasonably intelligent consumer . . . the court will interpret them in light of the objective, reasonable expectations of the average insured."  Hymed then cites Broemmer v. Abortion Servs. of Phoenix, Ltd., 840 P.2d 1013, 1016 (Ariz. 1992), to support its theory that even when the language of a contract is understandable, it can be defeated by the "reasonable expectations of the insured."

        With respect to the specific issue in this case, whether or not the Auto-Owners Policy provides coverage for alleged violations of the TCPA by Stevens & Ricci, the Pennsylvania Superior Court has issued one decision holding that TCPA violations do not invade the privacy of recipients in a manner such that they are covered as an "advertising injury" under insurance policies.  Telecom. Network Design v. Brethren Mut. Ins. Co., 5 A.3d 331, 334 (Pa. Super. 2010).  That holding partially resolves the issue before this Court.

        Arizona Courts have issued decisions concerning the TCPA, but have not considered whether such violations trigger insurance coverage.  See Martinez v. Green, 212 Ariz. 320, 131 P.3d 492 (Ariz. Ct. App. 2006) (considering whether a TCPA can be assigned); Joffe v. Acacia Mortg. Corp.,211 Ariz. 325, 121 P.3d 831 (Ariz. Ct. App. 2005) (considering whether advertisements sent via text violate the TCPA); ES! Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. 94, 50 P.3d 844 (Ariz. Ct. App. 2002) (considering whether to

grant class status to group of plaintiffs making claims under TCPA).  Because Arizona law is silent and Pennsylvania law is decided on at least one claim in the Underlying Litigation, no "true conflict" can be said to exist as between Pennsylvania and Arizona law in the context of TCPA coverage litigation.  Under Pennsylvania's choice of law rules, this Court must therefore apply Pennsylvania law to determine if coverage is available for property damage or advertising injury under the Auto-Owners Policy.

**B.  Whether Coverage is Available for Property Damage or Advertising Injury Under the Auto-Owners Policy.**

The parties dispute whether the Policy covers the Defendants' defense and the underlying lawsuit and indemnity for any liability arising out of the Underlying Action under the Policy's "property damage" and "advertising injury" provisions.

1.  <u>Property Damage</u>.

An insuring agreement in standard CGL form provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence."  Most courts have concluded that a plaintiff's allegation of the loss of use of its fax machine, paper and ink qualify as "property damage."

Next, under a standard insuring agreement, "property damage" is covered only if it is caused by an occurrence which is defined as an accident.  Determining whether the act of sending a fax is an "occurrence" is an issue of contention in courts.  In Pennsylvania, an insured's intentional conduct does not constitute an "accident."  <u>Nationwide Mut. Ins. Co. of Columbus v Piper</u>, 140 F.3d 222, 225-26 (3d Cir. 1998).  The crucial question for courts to ask in deciding whether an insurer has a duty to defend is whether the damages "were caused by an

event so unexpected, undesigned and fortuitous as to qualify as accidental." <u>Nationwide Mut.</u>
<u>Ins. Co. v. David Randall Assoc.</u>, 551 F. App'x 638, 641 (3d Cir. 2014)(quoting <u>Donegal Mut.</u>
<u>Ins. Co. v. Baumhammers</u>, 938 A.2d 286, 293 (Pa. 2007)).  The United States Court of Appeals
for the Third Circuit held in <u>David Randall</u> that sending unwanted fax solicitations does not
qualify as an "occurrence," or alternatively, that coverage is precluded by the intentional acts
exclusion in policies similar to the one at issue in this case.  551 F. App'x at 640-41.  The Court
held that "[w]hile appellants might not have intended to violate the TCPA, they did intend to
send the faxes and knew that sending them would use the recipients' paper, toner and time."  <u>Id.</u>
at 641.  Thus, the Court upheld the District Court's finding that the insurer did not have a duty to
defend.  <u>See also</u> <u>Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.</u>, 32 F. Supp. 2d 488,
509-11 (E.D. Pa. 2006), *aff'd sub nom.* <u>Subclass 2 of Master Class of Plaintiffs Defined &</u>
<u>Certified in January 30, 2006 & July 28, 2006 Orders of Circuit of Court of Cook Cnty., Ill. in</u>
<u>Litig</u>, 503 F.3d 339 (3d Cir. 2007).  This precludes coverage for "property damage" under the
Auto-Owners' Policy at issue in this case.

>    2.    <u>Advertising Injury</u>.

Auto-Owners first argues that no coverage is available for "advertising injury"
under the Auto-Owners Policy because Hymed did not plead any violations of the right of
privacy in the Underlying Action.  The basis of this argument is that Hymed failed to identify an
invasion of privacy tort in its Class Action Complaint and that, based on case law, the term
"privacy" refers to the tort of invasion of privacy.  Auto-Owners argues that if not literally plead
as such in the Complaint, there is no coverage for "invasion of privacy" because only the tort is
covered.  In the Underlying Action, the only claim pled by Hymed is a violation of the TCPA,

which is not identified as an "advertising injury" offense in the Auto-Owners Policy.  Thus,

according to Auto-Owners, Hymed cannot meet its burden of establishing that the insured clause

was triggered and there is no coverage for the Underlying Action.  Hymed does not respond to

this argument but instead cites cases from other jurisdictions where coverage was found.  In those

cases, courts do not consider the threshold question of whether one of the torts or causes of

action which are "advertising injury" offenses have been pled in the Underlying Action.  Hymed

bases its claim for privacy coverage on legislative history and argues that such a claim is one for

invasion of privacy solely because Congress stated that "invasion of privacy" was one of the evils

the TAPA was meant to address.  According to Hymed, because the legislative history of the Act

uses the term "privacy" and the Auto-Owners Policy mentions the term "right of privacy," the

two forms of privacy must be the same.

Assuming, *arguendo*, that Hymed pled a claim for invasion of the right of privacy

in the Underlying Action, Auto-Owners contends that coverage still does not exist for

"advertising injury" under the Auto-Owners Policy.  Under Pennsylvania law, an action for

invasion of privacy is comprised of four torts: (1) intrusion upon seclusion; (2) appropriation of

name or likeness; (3) publicity given to private life or the right to secrecy; and (4) publicity

placing a person in a false light, including intrusion upon seclusion and publicity given to private

life.  OneBeacon Am. Ins. Co. v. Urban Outfitters, Inc., No. 13-5269, 2014 WL 2011494, at *11

(E.D. Pa. May 15, 2014)(citing Marks v. Bell Tel. Co. of Pa., 331 A..2d 424, 430 (Pa. 1975) and

Melrose Hotel, 432 F. Supp.2d 488).  "Pennsylvania courts recognize that the privacy right

protected under an 'advertising injury' clause is the right to secrecy."  Id.

No coverage exists for "advertising injury," as determined by the Third Circuit,

14

this District Court, and the Pennsylvania courts which have so held because the type of privacy violation covered by insurance policies such as the Auto-Owners Policy – privacy interests in secrecy – are not violated by "junk" faxes.  See Telecom. Network Design, 5 A.3d at 337.  The Pennsylvania Superior Court issued one decision holding that TAPA violations do not invade the privacy of recipients in any manner such that they are covered as an "advertising injury" under insurance policies.  Id. at 334. Rather, any such violation would be a violation in the right of seclusion, which is not covered by the Auto-Owners Policy.  Id. at 336-37; see also St. Paul Fire & Marine Ins. Co. v. Br. Int'l Corp., 319 F. App'x 121, 2009 WL 865077 (3d. Cir. Apr. 2, 2009); Md. Cas. Co. v. Express Prods., Inc., No. 09-857, 08-2909, 2011 WL 4402275 (E.D. Pa. Sept. 22, 2011); Melrose Hotel, 432 F. Supp.2d 488.

In this case, Stevens & Ricci hired a third party to send out the faxes.  Each court that concluded that privacy interests in secrecy are not violated by junk faxes holds that such violations are violative of the right of seclusion, even when it is alleged that a policyholder hired a third-party vendor, and the third-party vendor was responsible for sending the problematic faxes.  See, e.g., David Randall, 551 F. App'x at 641; Melrose Hotel, 432 F. Supp.2d at 510.  Accordingly, there is no coverage under the Auto-Owners Policy because the privacy interests in secrecy are not violated by the junk faxes sent out by Hymed.

Hymed invokes Cynosure, Inc. v. St. Paul Fire & Marine Ins. Co., 645 F.3d 1 (1st Cir. 2011)(Souter, J.), in which former Supreme Court Justice Souter distinguished between policies that provided coverage for advertising injury in the case of "[o]ral or written publication of material that violates a person's right of privacy" (the same language of the Auto-Owners Policy) and policies that provide coverage for "making known to any person or organization

15

covered material that violates a person's right of privacy."  645 F.3d at 2-5.  Justice Souter found

under Massachusetts law that the second category of policies would likely be held to preclude

coverage for intrusion upon seclusion privacy violations.  Id. at 4-5.  Justice Souter distinguished

the language in these two types of policies to hold that no coverage existed because, in a prior

decision, the Supreme Judicial Court of Massachusetts had already determined that the

"publication" language was ambiguous.  Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 869

N.E.2d 565 (2007).

      As correctly noted by Auto-Owners, this Court does not need to draw this

distinction because no Arizona court has issued a coverage opinion in any TCPA case and other

courts, including this District Court and the Pennsylvania Superior Court, have found no

coverage when considering policies similar to the Auto-Owners Policy which uses "publication"

language.  Maryland Cas. Co. v. Express Prods., Inc., CIV.A. No. 09-857, 2011 WL 4402275

(E.D. Pa. Sept. 22, 2011); Telecom. Network Design, 5 A.3d at 334.   Thus, we find that no

coverage is available for "advertising injury" under the Auto-Owners Policy.

    C.    **Whether Auto-Owners Has a Duty to Indemnify Stevens & Ricci.**

      "[A] duty to defend is broader than the duty to indemnify. . . . Further, . . . because

the duty to defend is broader, a finding that it is not present will also preclude a duty to

indemnify. . . . Although, . . . the duty to defend is separate from and broader than the duty to

indemnify, both duties flow from a determination that the  complaint triggers coverage."

Nationwide Mut. Ins. Co. v. David Randall Assoc., No. 12-4208, 2013 WL 271816 (E.D. Pa.

Jan. 24, 2013), aff'd, 551 F. App'x 638 (3d Cir. 2014)(quoting Kvaerner Metals Div. Of

Kvaerner U.S., Inc., 908 A.2d 888 n.7 (Pa. 2006)(internal citations omitted).  Because we

conclude that the allegations in the complaint in the Underlying Litigation do not give rise to Auto-Owners' duty to defend under the Policy terms, Auto-Owners also has no duty to indemnify Stevens & Ricci from liability incurred in the Underlying Litigation.  Summary judgment is appropriate for Auto-Owners as to the duty to indemnify.

**V.**     **CONCLUSION**

For the reasons set forth above, Auto-Owners does not have a duty to defend or a duty to indemnify Stevens & Ricci in the Underlying Litigation.  Accordingly, summary judgment in favor of Auto-Owners is appropriate.  Hymed's Cross-Motion for Summary Judgment is denied.  An appropriate Order follows.